**IN THE UNITED STATES OF DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| JONATHAN A. SASSER, | |
| Plaintiff, | |
| vs. | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, UNIVERSITY OF GEORGIA, JERE WADE MOREHEAD, INDIVIDUALLY AND AS PRESIDENT UNIVERSITY OF GEORGIA, UNIVERSITY OF GEORGIA EQUAL OPPORTUNITY OFFICE, ERYN JANYCE DAWKINS, INDIVIDUALLY AND AS DIRECTOR EQUAL OPPORTUNITY OFFICE, UNIVERSITY OF GEORGIA, UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION, INC., EDWARD MCMILLIAN TATE, | Civil Case No.: 1:20-CV-04022-SDG<br><br>**JURY TRIAL REQUESTED** |

INDIVIDUALLY AND AS VICE
CHANCELLOR OF LEGAL
AFFAIRS, UNIVERSITY OF
GEORGIA AND C. DEAN ALFORD,
P.E., INDIVIDUALLY AND AS
MEMBER OF BOARD OF REGENTS
OF THE UNIVERSITY SYSTEM OF
GEORGIA.

                              Defendants.

## SECOND AMENDED COMPLAINT

COMES NOW Jonathan A. Sasser  (hereinafter "Plaintiff" or "Jonathan")
and files this Complaint against BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA, (hereinafter "Board"), University of Georgia,
(hereinafter "UGA"), JERE WADE MOREHEAD, INDIVIDUALLY AND AS
PRESIDENT OF UNIVERSITY OF GEORGIA, (hereinafter "Morehead"),
UNIVERSITY OF GEORGIA EQUAL OPPORTUNITY OFFICE, (hereinafter
"EOO"), ERYN JANYCE DAWKINS, (hereinafter "Dawkins") INDIVIDUALLY
AND AS DIRECTOR UNIVERISTY OF GEORGIA EQUAL OPPORTUNITY
OFFICE, UNIVERSITY OF GEORGIA ATHLECTIC ASSOCIATION, INC.,
(hereinafter "UGAAA"or UGA Athletic Association, Inc.), EDWARD
MCMILLIAN TATE, INDIVIDUALLY AND AS CHANCELLOR OF LEGAL
AFFAIRS, UNIVERSITY OF GEORGIA, (hereinafter "Tate") and C. DEAN
ALFORD, P.E., INDIVIDUALLY AND AS MEMBER OF BOARD OF

REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, (hereinafter "Alford").

## INTRODUCTION

1.      The Supreme Court of the United States has made clear that "state colleges and universities are not enclaves immune from the sweep of the First Amendment".   Healy v. James, 408 U.S. 169, 180 (1972).   "With respect to persons entitled to be there, our cases leave no doubt that the First Amendment rights of free speech and association extend to the campuses of state universities." Widmar v. Vincent, 454 U.S. 263, 268 (1981).   Yet, University of Georgia, maintains practices that subjects students like Jonathan, to sanctions which include but are not limited to suspended from school or classes; barred from attending classes; limited to attending classes remotely; released from athletic programs/teams; prohibited from participating in any UGA Athletic units, in any capacity, for the duration of affiliation with UGA; and prohibited for a period of time from attending all UGA Athletic events.

Jonathan has attempted to resolve this matter with all Defendants and a UGA Coach Stricklin acting as agent for UGA and UGAAA by following the required procedures and rules.   At every attempt, the Defendants continued to violate his rights and refused to follow the required procedure.   Specifically the EOO did not

provide an impartial Officer resulting in excess sanctions, which similar situated students/athletes did not receive and violated Plaintiff's constitutional rights. EOO Officer Dawkins, did not follow the required two (2) person procedure for the Investigation and Hearing. Tate and Alford would not allow Plaintiff or his Attorney the right to be heard at the hearing of Board of Regents for this matter. As a result Plaintiff suffered extensive damages as the Defendants' and UGA Athletic Association, Inc. caused severe damages, including but not limited to employment damage and thus monetary damages. Thus Plaintiff believes unfortunately he has no other choice but to file this lawsuit.

## JURISDICTION AND VENUE

2. This action arises under the First and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act, 42 U.S.C. 1983 and 1988.

3. Jurisdiction for this suit is conferred in part by 42 U.S.C. 1983, which provides, in part:

Every person, who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress.

4.     Under 28 U.S.C. 1331 and 1343 (a)(3) and (4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

5.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. 2201 and 2202 and Federal Rules of Civil Procedure 57.

6.     This Court has the authority to issue declaratory and injunctive relief pursuant to 42 U.S.C. 1983 and Federal Rules of Civil Procedure 65.

7.     This Court has the authority to award attorney fees' and costs pursuant to 42 U.S.C. 1988.

8.     Venue is proper in this District pursuant to 28 U.S.C.  1391(b) as the events giving rise to the instant claims occurred within this District and as at least one Defendant resides in this District.  PARTIES

9.     At the time of filing the Complaint, Plaintiff is a resident of Evans, Georgia and a student at UGA at all times relevant to this Complaint. Plaintiff was a member of an athletic team from 2015 until he released from the team by UGA in October 2018 as a result of the underlying facts of this matter, including but not limited to engaging in constitutional protected speech, and thus at all times relevant to this Complaint.

10.     Upon information and belief, Defendant Board of Regents of the University of Regents of the University System of Georgia is a political subdivision of the State of Georgia with the capacity to sue or be sued. The Board operates and supervises approximately thirty-five, (35) university and college institutions throughout the State of Georgia and is headquartered and has its principal place of business in Atlanta, Georgia.

11.     Upon information and belief, Defendant University of Georgia is a college level political subdivision of higher learning located in Athens, Georgia and is a political subdivision of the State of Georgia with the capacity to sue or be sued.

12.     Upon information and belief, Defendant Jere Wade Morehead is a citizen of Georgia and resides in Clarke County, Georgia. Morehead is the President of UGA.

13.     Upon information and belief, University of Georgia Equal Opportunity Office has a principal place of business located in Clarke County, Georgia.

14.     Upon information and belief, Eryn Janyce Dawkins, is the Director of Equal Opportunity Office at UGA. Dawkins is a citizen of the state of Georgia and resides in Gwinnett County.

15.     University of Georgia Athletic Association, Inc. is a Georgia corporation per O.C.G.A. 20-3-78 and upon information and belief has a principal place of business in Clarke County, Georgia.

16.     Upon information and belief, Edward McMillian Tate, is a citizen of Georgia and resides in Fulton County, Georgia.  Tate was the Vice Chancellor of Legal Affairs, University of Georgia at the time of the events of this matter.

17.     Upon information and belief, C. Dean Alford, P.E., is a citizen of Georgia.  At the time of the events of this matter, C. Dean Alford, P.E. was a Member of Board of Regents of the University of Georgia.

## FACTUAL AND PROCEDURAL BACKGROUND
### And
### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

18.     Jonathan was permanently released from UGA Baseball Team in October 2018 by UGAAA and UGA based on engaging in constitutional protected speech while on campus at UGA. Jonathan made a constitutionally protected statement while on UGA campus in Athens, Georgia on or about September 29, 2018. UGA via its EOO office, imposed additional sanctions on or about October 9, 2018, revised from prior issuance of October 4, 2018.  On October 4, 2018 Jonathan was suspended for the remainder of Fall 2018 semester with eligibility to enroll in the following semester, revised on October 9, 2018 to allow remotely attending classes for the Fall Semester 2018 with professors' permission, which

was not possible for all classes Jonathan was enrolled; prohibited from participating in any UGA Athletic units for the duration of his affiliation with UGA; prohibited from attending all UGA home events as a spectator until January 2020; and prohibited for the remainder of fall 2018 semester from entering the UGA campus without permission from EOO.

19.  Jonathan was instructed on or about September 30, 2018 through October 3, 2018 to meet on several occasions with an UGA Baseball Coach Stricklin; and Darrice Griffin and Chris Latko of UGAAA. Jonathan initially meet with Coach Stricklin on September 30, 2018 who read an email to him and EOO at UGA, from Africa Buggs.  Ms. Buggs advised that Jonathan said the N word at a UGA football game and included several other facts.   Coach Stricklin asked if Ms. Buggs' statement was true.  Jonathan admitted to saying the N word, but advised the many of the alleged facts were out of proportion.    The next day Coach Stricklin instructed Jonathan to meet with Darrice Griffin, an Assistant Director of the UGAAA.  Jonathan met with Ms. Griffin the next day.  Jonathan also met with Christopher Lakos, Associate Sports Communications Director of UGAAA on or about this time period.   Jonathan was asked questions by Darrice Griffin and Christopher Lakos regarding the subject incident and what Jonathan said, including Jonathan's protected speech.

On or about October 3, 2018 Jonathan was instructed by Coach Stricklin to report to the UNIVERSITY OF GEORGIA ATHLETIC ASSOCIATION, INC.. Jonathan met with Darrice Griffin and Coach Stricklin and was advised that he was released from UGA Baseball team permanently for using the N word at the subject event on September 29, 2018 on UGA campus. Christopher Lakos also attended part of the meeting. Jonathan learned members of UGA and UGAAA had spoken and had learned the three students were going to picket about the subject incident. UGA advised UGAAA that Jonathan had to be released from the baseball team, which is what UGAAA did.

The operation of the intercollegiate athletic program at the University of Georgia is a legitimate function of the University and is the responsibility of the so-called "Institutional authority" at the University of Georgia. The President of UGA is the instructional authority responsible for controlling the intercollegiate athletic program. The Athletic Association is the management tool which the President of UGA uses to carry out his responsibilities to control the University's intercollegiate Athletic Program.

20.     Jonathan did not receive any notice that there would be hearings and/or investigations to discuss his constitutional protected speech made while on campus at UGA with UGAAA, UGA, the EOO and/or UGA Coach Stricklin. Jonathan did not have time to prepare for such hearings. However during such

meetings Jonathan was questioned regarding his constitutional protected speech made while on campus at UGA.

21.    There have been other UGA students/agents/athletes who engaged in similar activities/speech or more series acts such as crime.  The Defendants did not release such UGA students/agents/athletes from a UGA Athletic Team or suspend them.  Nor did the Defendants enter sanctions as serious against other UGA students/agents/athletes who engaged in similar activities/speech.  Thus the Plaintiff's Equal Protection Rights were also violated. Additional, specific facts are listed below.

22.    UGA, UGAAA and UGA Coach Stricklin as reasonable college official or agents **of** UGA should have known, release of Plaintiff from UGA Athletic Team involved breach of Plaintiff's First Amendment right to Freedom of Speech, Due Process and Equal Protection Rights and violated Plaintiff's clearly established constitutional rights, rendering them and Defendants liable to Plaintiff under 42 U.S.C. 1983.

23.    The EOO also conducted a hearing and investigation.  Eryn Janyce Dawkins, Director of EOO at UGA and a Georgia licensed attorney conducted the hearings. Dawkins failed to provide Jonathan with meaningful notice of the hearings.  Dawkins was the sole fact finder and decision maker of this matter. Dawkins lacked impartiality during the entire process and hearing. Dawkins also

violated other provisions which include, but are not limited to, the two (2) person requirement, i.e. investigator and hearing officer/panel must be separate. Investigator cannot be hearing officer or on panel deciding the case.  This denied Plaintiff Due Process as it had property and liberty interests at stake.  This is also breached the contract UGA and EOO had with Plaintiff.  Dawkins entered her initial findings on October 4, 2018, approximately five (5) days after the date Jonathan engaged in constitutional protected speech.  Jonathan did not have a reasonable amount of time to prepare for the EOO hearing or investigation.  Based on Dawkins lack of impartiality, she created a hostile environment, which prevented Jonathan from setting forth a defense.

24.    On October 4, 2018 Dawkins, as Director of EOO, entered written sanctions against Jonathan, which were revised on October 9, 2018. Specifically such sanctions included, but are not limited to Jonathan being suspended for the remainder of a semester with eligibility to enroll in the following semester, revised on October 9, 2018 to allow remote attendance of school with professors' permission, which was not possible for all classes Jonathan was enrolled; prohibited from participating in any UGA Athletic units for the duration of his affiliation with UGA; prohibited from attending all UGA home events as a spectator until January 2020; and prohibited for the remainder of fall 2018 semester from entering the UGA campus without permission from EOO.  There

have been other students/agents of UGA that engaged in similar speech and conduct as Plaintiff that the EOO denied to pursue and did not sanction. Thus the Plaintiff's Equal Protection Rights were violated as well.

25.     Jonathan filed an appeal to the EOO decision to UGA President, Jere Morehead. Such appeal cited law that clearly supported Jonathan had engaged in constitutional protected speech. On November 9, 2018 Jere W. Morehead, President, UGA and Georgia licensed attorney responded to Jonathan's appeal. Despite law supporting Jonathan's speech was constitutional protected speech, President Morehead upheld the decision of EOO and the Athletic Association's Decision to permanently release Jonathan from an UGA Athletic Team due to cascading agenda, including financial and other considerations.

26.     Jonathan filed an appeal to the Board of Regents of the University System of Georgia of President Morehead's decision. The Board also violated Jonathan's constitutional rights, including but not limited to Due Process and First and Fourteen Amendments. The Board refused to allow the attorney for Jonathan to participate at the hearing for the Appeal, which took place in Atlanta, Georgia. Tate and Alford failed to follow procedures regarding allowing Jonathan's participation at the hearing. Jonathan's attorney was denied the right to make a statement at the hearing, ask any questions or participate in any manner. The Board of Regents' of University of Georgia upheld UGA's former decision to

sanction Jonathan for constitutional protected speech. Such sanctions included but are not limited to the sanctions of the EOO and permanent release from an UGA Athletic Team.

27.    Defendants have committed numerous violations of Federal and State Law.  Plaintiff's future has been severely compromised and damaged.  Without appropriate redress, the sanctions imposed as a result of Defendants' and Defendants' agents biased investigation and hearings will continue to cause irreversible damage to Plaintiff's career and future employment prospects, with no end in sight. As a result there is a justiciable controversy between the parties with respect to the outcome, permanency and future handling of Plaintiff's formal student record at UGA. By reason of the foregoing, Plaintiff seeks, pursuant to 28 U.S.C. 2201, a declaration of the parties' rights.

28.    All Defendants including, but not limited to, UGA Coach Stricklin, Darrice Griffin and UGAAA were agents of UGA at the time of the events of this matter. As a result of the UGA, its agents and the all of the Defendants' actions, Plaintiff 's constitutional right to freedom of speech has been denied under the First Amendment to the Constitution of the United States and 42 U.S.C. 1983. Defendants including, but not limited to, UGA Coach Stricklin, Dairrice Griffin and UGAAA violated Plaintiffs clearly established constitutional rights, of which any reasonable college official should have known, rendering him/her liable to

Plaintiff under 42 U.S.C. 1983.

29.   Defendants including, but not limited to, Dawkins, Morehead, UGA Coach Stricklin, Darrice Griffin and UGAAA and its agents' actions constitute breach of contract for failing to follow the practices and procedures set forth in the UGA student handbook and student athletic handbook which establish a binding agreement between the Defendants and each UGA student.  Specific, additional facts are listed below.

30.   As a direct and proximate result of Defendant(s) actions, Plaintiff suffered emotional distress, humiliation and embarrassment over the loss of his constitutional rights and the threat of retaliatory action.

31.   Plaintiff has also suffered actual compensable injury, including loss of multiple employment opportunities, including but not limited to not being drafted/employed as a professional athletic player/member in a major professional sports league, despite having the proven ability and record.  The amount of Plaintiff's employment opportunities will be shown later either in discovery or trial.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Freedom of Speech Under  The First and Fourteenth Amendments (42 U.S.C. 1983) (ALL DEFENDANTS)**

32. Plaintiffs repeat and reallege each of the foregoing paragraphs in this Complaint.

33. The First and Fourteenth Amendments extend to the campus of public colleges and universities such as UGA.  See Widmar v. Vincent, 454 US 263, at 268 (1981) (noting that "[w]ith respect to persons entitled to be there, our cases leave no doubt that the First Amendment right of speech and association extend to the campuses of state universities"); *see also* Healy v. James, 408 U.S. 169, at 180 (1972).

34. It is settled law that a public university may not discipline a student for engaging in protected expression. The Supreme Court held such over four decades ago in Papish v. Board of Curators of the University of Missouri, 410 U.S. 667 (1973). While recognizing a state university's undoubted prerogative to enforce reasonable rules governing student conduct, as noted above it was noted that state colleges and universities are not enclaves immune from the sweep of the First Amendment. See Healy v. James, 408 U.S. 169 (1972).  Healy make it clear that the mere dissemination of ideas-no matter how offensive to good taste-on a state university campus may not shut off in the name alone of "conventions of decency."

35. The First Amendment protects even speech that some may, or even all, find hateful.  The Supreme Court reiterated this fundamental principle in Synder

v. Phelps, 562 U.S. 443  (2011), noting:  "Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and inflict great pain.  …. We cannot react to that pain by punishing the speaker.  As a nation we have chosen a different course-to protect even hurtful speech on public issues to ensure that we do not stifle public debate. The Court again reaffirmed this principle in Matal v. Tam, 137 U.S. (2017), holding unanimously that the perception that expression is "hateful" or that it demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground" is not a sufficient basis on which to remove speech from the protection of the First Amendment.

36.   If hateful speech also falls under a category of unprotected speed, such as threats or incitement to imminent lawless action, it will lose its constitutional protection. But Jonathan's publicized expression did not constitute either of those things. There were no threats or incitement to imminent lawless action. UGA has a video of the incident.

37.   Nor does Jonathan's expression, as some will argue, constitute discriminatory harassment. At the time of this event, Jonathan was a student at UGA. Unlike a faculty member or administrator, students do not usually have the kind of power over other students that make harassment (rather than just hostility or unpleasantness) possible.  In order for student behavior to

constitute actionable "hostile environment" harassment under the applicable legal standard provided by the Supreme Court in <u>Davis v. Monroe County of Board of Education,</u> 526 U.S. 629 (1999), it must be unwelcome, discriminatory on the basis of gender or another protected status, and so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school." By definition, this would prevent a reasonable person from receiving his or her education.  In a July 28, 2003, "Dear Colleague" letter sent to all college and university presidents, the Office for Civil Rights of the U.S. Department of Education, which is tasked with enforcing anti-discrimination law, made clear that harassment "must include something beyond the mere expression of views, <u>words,</u> symbols or thoughts that some person finds offensive."

38.   Plaintiff's public statement regarding race and stating the N word  made on UGA campus in Athens, Georgia, on September 29, 2018, was constitutional protected speech protected by the First Amendment of the Constitution. Plaintiff 's intent and context were in a positive manner and support of a person.  Plaintiff was rooting for Justin Fields, a quarterback to be played in the football game.   When Plaintiff learned his statement was viewed negatively, he stopped and apologized.   Defendants and its agents actions

were taken in retaliation for Plaintiff's exercise of its First Amendment freedoms. Defendant stated reasons for sanctions against Plaintiff by Defendants and its agents were pretextual and had no rational basis, being wholly contradicted by the view of the video and Plaintiff posed no threat to others at any time.

39.   As the law is clearly established in this area, and as Defendants and its agents had (and have) fair warning that suspending and sanctioning a student from/by a public university in retaliation for the exercise of First Amendment freedoms is unconstitutional, Defendants are liable in their official capacities, for violating Plaintiff's First Amendment rights.

40.   However Jonathan was permanently released from the UGA Baseball Team on or about October 3, 2018 by UGAAAA, (i.e. UGA Athletic Association**,** Inc.), UGA and Morehead, President of UGAAA for engaging in constitutional protected speech in saying the N word.   UGA Coach Stricklin on behalf of UGA Athletic Association, **Inc.**, instructed Jonathan to meet with him **on several occasions** in or about September 30, 2018 and October 2018.   Jonathan did not receive any notice that Coach Stricklin would investigate and conduct a hearing on behalf of the UGA Athletic Association, Inc. and UGA regarding the constitutional protected speech Jonathan engaged.   UGA Coach Stricklin instructed Jonathan to meet with Darrice Griffin, Assistant Director of UGAAA and Plaintiff met with

her on several occasions at the UGAAA office.  Plaintiff was not given notice that Darrice Griffin was conducting an investigation.  However during meetings Coach Stricklin and UGAAA Assistant Director, Darrice Griffin, completed an investigation/hearing regarding Jonathan's constitutional protected speech. Despite no notice, on or about October 3, 2018 UGA Coach Stricklin as agent of UGA and UGAAA and Darrice Griffin, Assistant Director of UGAAA, pursuant to instructions and knowledge of UGA Athletic Association, Inc., and Morehead, who is President of UGAAA, permanently released Jonathan from the UGA Baseball Team.  The meeting wherein Jonathan was released from the UGA Baseball team occurred at the UGAAA office and the parents of Jonathan, Rachel and Jon Sasser were present.

UGA via its EOO imposed additional sanctions, also for Plaintiff engaging in constitutional protected speech, on or about October 9, 2018, revised from prior issuance of October 4, 2018.  On October 4, 2018 Jonathan s suspended for the remainder of the Fall 2018 semester with eligibility to enroll in the following semester, revised on October 9, 2018 to allow remote attendance of school with professors' permission, which was not possible for all classes Jonathan was enrolled; prohibited from participating in any UGA Athletic units for the duration of his affiliation with UGA; prohibited from attending all UGA home events as a

spectator until January 2020; and prohibited for the remainder of fall 2018 semester from entering the UGA campus without permission from EOO.

41.   Jonathan filed an appeal to the EOO decision.   Such appeal cited law that clearly supported Jonathan had engaged in constitutional protected speech. On November 9, 2018 Jere W. Morehead, President, UGA responded to Jonathan's appeal.     Despite law supporting Jonathan's speech was constitutional protected speech, President Morehead, a Georgia licensed attorney upheld the decision of EOO and UGA Athletic Association's Decision to permanently release Jonathn from an UGA Athletic Team due to cascading agenda, including financial and other considerations despite being able to understand the law which finds Plaintiff's speech involved constitutionally protected speech.

42.   Plaintiff filed an appeal to the Board of Regents of the University System of Georgia of President Morehead's decision.   The Board also violated Jonathan's constitutional rights, including but not limited to Due Process and First and Fourteenth Amendments.  The Board refused to allow the attorney for Jonathan to participate at the hearing for the Appeal.  Tate and Alford failed to follow procedures regarding allowing Jonathan's participation at the hearing.  Jonathan's attorney was denied the right to make a statement at the hearing, ask any questions or participate in any manner.   The Board of

Regents of University of Georgia upheld UGA's former decision to sanction Jonathan for constitutional protected speech. Such sanctions included but are not limited to the sanctions of the EOO and permanent release from an UGA Athletic Team.

43.   As a result of the sanctions, processing of same and as applied against Plaintiff for engaging in its constitutional right to freedom of speech, the Defendants and its agents are responsible for the deprivation of Plaintiff's clearly established constitutional rights under the First Amendment to the Constitution of the United States, as applied to the states by the Fourteenth Amendment and violation of 42 U.S.C. 1983.  Defendants violated Plaintiffs clearly established constitutional rights, of which any reasonable college official should have known, rendering him/her liable to Plaintiff under 42 U.S.C. 1983.

44.   As a direct and proximate result of Defendant(s) actions, Plaintiff suffered humiliation and embarrassment over the loss of his constitutional rights and the threat of retaliatory action.

45.   Plaintiff has suffered actual compensable injury, including not being drafted as a professional athletic player in a major professional sports league, in an amount to be shown later either in discovery or trial.

46.   Plaintiff has suffered significant emotional distress as a result of Defendants and Defendants agent's unconstitutional actions.

47.   In the alternative to actual compensatory damages, Plaintiff is entitled to an award of nominal damages for the violation of his constitutional rights.

48.   Plaintiff is also entitled to an award of punitive damages because these Defendants conduct involves recklessness or callous indifference to the federally protected rights of others, including Plaintiff.

49.   The denial of constitutional rights is an irreparable injury *per se, Elroy v. Burns,* 427 U.S. 347, 373 (1976), and Plaintiffs are entitled to declaratory and injunctive relief, damages in an amount to be determined at trial, plus prejudgment interest, expenses, and the reasonable costs and disbursements of this lawsuit, including reasonable attorney fees.

## SECOND CAUSE OF ACTION
### PROCEDUAL AND SUBSTANTIVE DUE PROCESS
### Fourteenth Amendment (42 U.S.C. 1983)
### (ALL DEFENDANTS)

50.   Plaintiffs repeat and reallege each of the foregoing paragraphs in this Complaint.

51.     Article I, Section 1, Paragraph 1 of Georgia Constitution; and the Due Process Clause of the Fourteenth Amendment, guarantee that no person shall be deprived of life, liberty or property without due process of law.

52.     Students at public universities enjoy protected property interests in their education such that due process must be afforded them prior to the denial of those interests.  At a minimum, this includes notice and opportunity to be heard. See Goss v. Lopez, 419 U.S. 565, 574 (1975); Bd. of Curators v. Horowitz, 435 U.S. 78, 86 (1978). Defendants and its agents have not provided Plaintiff with these essentials rights.

53.     Eryn Janyce Dawkins, Director of EOO of UGA and a Georgia licensed attorney, conducted the investigation of the incident wherein Plaintiff engaged in constitutionally protected speech involving race.  Dawkins issued two (2) documents regarding her investigation, hearing and findings, dated October 4, 2018 and October 9, 2018.

54.     Dawkins conducted the investigation and hearings as the sole fact finder and decision maker.  Dawkins solely chose which witnesses and interviewed them by herself without other EOO staff, determined the findings of the investigation, imposed the sanctions and wrote the investigation findings regarding Jonathan's constitutionally protected speech.

The Board's and UGA policies and provisions in the UGA student handbook and student athletic handbook Defendants' obligation to follow the procedures they have established for student discipline and Freedom of Expression.  Defendants, Dawkins, UGA, UGAAA and Morehead breached the student handbook's provision by sanctioning Jonathan for speech that is permitted by the Freedom of Expression.

The Equal Opportunity Office is part of the University of Georgia's Code of Conduct, which is part of the UGA student handbook.  Defendants failed to follow these binding procedures as well as others. *Specifically there is to be a 2 part process for the Investigation and Resolution/Hearing, an Investigator and Misconduct Panel or Hearing Officer.  Once the Investigator finalizes the investigation report, the Investigator is required to provide such report to the Misconduct Panel or Hearing Officer. Further the investigator may testify as a witness regarding the investigation and findings, BUT SHALL OTHERWISE HAVE NO PART IN THE HEARING PROCESS and shall not attempt to otherwise influence the proceedings outside of providing testimony during the hearing.* The actual language is…..

1. The final investigation report should be provided to the misconduct panel or hearing officer for consideration in adjudicating the charges brought against the Respondent. A copy shall also be provided to the respondent and

Complainant (where applicable) before any hearing. The investigator may testify as a witness regarding the investigation and findings, but shall otherwise have no part in the hearing process and shall not attempt to otherwise influence the proceedings outside of providing testimony during the hearing. Dawkins was the Investigator and Misconduct Panel or Hearing Officer in the subject case. This precluded the two (2) part and separate fact finder and decision maker provision required. This issue was addressed to UGA President Morehead and attempt to the Board but they refused to follow their own rules. This violation added to Dawkins issue of lack of impartiality.

55. Dawkins failed to be an impartial fact finder and decision maker during her involvement with the subject matter. Dawkins spoke with Plaintiff and its parents, **Rachel and** Jon Sasser. Dawkins advised that "I am personally offended" by the words contained in Jonathan's constitutionally protected speech. Ms. Dawkins' statement reveals she was not an impartial fact finder and had a chilling affect on Plaintiffs' ability to present a case or defense. Dawkins made it clear she was not interested or open to hear any information or defense of Plaintiff and that Plaintiff's participation in the investigation was not welcomed. There were credibility issues in some of the statement(s) of the witness(es). Such statements are written. Despite same, Ms. Dawkins made it

verbally clear, Plaintiffs were not welcomed to discuss/confront or cross exam such witness(es) and if Plaintiff did, it would not work well for him. This had a chilling effect on Plaintiff's opportunity to be heard and participate in the investigation.  Dawkins created a hostile environment for Jonathan.

56. Thereafter Ms. Dawkins issued written sanctions which breached Jonathan's constitutional rights for engaging in freedom of speech.  Such sanctions were clearly excessive as Dawkins reversed herself, exceeded sanctions given for allegedly similar situated individuals and violated Plaintiff's Equal Protection rights as discussed below.    The October 4, 2018 findings and sanctions suspended Jonathan for the remainder of the Fall 2018 semester despite, no notice of hearing being issued to Jonathan, a due process violation according to Goss v. Lopez, 419 U.S. 565 (1975).  Dawkins issued written revised findings and sanctions on October 9, 2018, which permitted Jonathan to participate in his classes remotely for the Fall Semester of 2018, if possible.  If not possible, Jonathan was to withdraw from his classes.  Jonathan was not able to remotely attend all of his classes per his professors and had to withdraw from such class(es) for the Fall Semester of 2018.   Dawkins' sanctions also prohibited Jonathan from participating in any UGA Athletic units for the duration of his affiliation with UGA; prohibited from attending all UGA home events as a spectator until January 2020; and prohibited for the

remainder of fall 2018 semester from entering the UGA campus without permission from EOO.

57.   UGA Coach Stricklin on behalf of UGA Athletic Association and thus UGA, instructed Jonathan to meet with him on several occasions in or about September 30, 2018 and October 2018.   Jonathan did not receive any notice that such Coach would investigate and conduct a hearing on behalf of the UGA Athletic Association and UGA regarding the constitutional protected speech Jonathan engaged.   However during all of these meetings Coach Stricklin and UGAAA Assistant Director, Darrice Griffin, completed an investigation/hearing regarding Jonathan's constitutional protected speech.   Despite no notice, the UGA Coach Stricklin as agent of UGA and UGAAA and Darrice Griffin, of UGAAA pursuant to instructions and knowledge of UGA Athletic Association, Inc. and UGAAA President, Morehead**,** permanently released Jonathan from the UGA Baseball Team at a meeting at UGAAA wherein the parents of Jonathan, Rachel and Jon Sasser were present.

58.   Based on the foregoing Dawkins, UGA Coach Stricklin, DarriceGriffin, Assistant Director at UGAAA as agent of UGA and UGA Athletic Association, Inc. and Morehead violated the rights and guarantees set forth in the Fourteenth Amendment of the United States Constitution during the investigation and adjudication of Jonathan's constitutional protected speech.   Jonathan' Due

Process rights, were violated. Students facing temporary suspension from a public school have property and liberty interest that qualify for protection under the Due Process Clause.   See Goss v. Lopez, 419 U.S. 565 (1975).   Goss  recognizes education as a property interest which is protected by Due Process.  Education may not be taken away without adherence to minimum procedures required by that Clause.   Suspension could seriously damage a student's standing with their fellow pupils and their teachers as well as well as interfere with later educational and employment opportunities.   See Goss, ID. Due Process also forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor or integrity is at stake because what the government is doing to him, Due Process must be had. If these interests are at stake, a violation could seriously damage a student's standing with their fellow pupils and their teachers as well as well as interfere with later educational and employment opportunities.  See Goss, ID.

59.    Jonathan had a property in his education and liberty interest in his good name, reputation, honor or integrity requiring Due Process.  However Ms. Dawkins violated Jonathan's due process rights, by failing to be an impartial fact finder and decision maker; failing to provide notice of the hearings; creating a hostile environment during the investigation and hearing; and failing to provide appropriate weight to witnesses with credibility issue. As a result Plaintiff

sustained damages with employment opportunities.  Specifically Plaintiff was not drafted/employed as a member of a professional major sports athletic team and lost significant income in an amount to be shown later in discovery or trial.

60.     Jonathan never received notice of the investigation/hearing for his constitutional protected speech of his Coach prior to their September 30, 2018 and October 2018 meetings wherein Jonathan was permanently released from the team. Jonathan's liberty interest in good name, reputation, honor and integrity was damaged as the release affected and interfered with his later employment opportunities, including but not limited to being drafted/employed as a player/member of major professional sports league, resulting in loss of income in an amount to be shown later in discovery or trial.

61.     In light of the Board's and UGA and its agents' retaliatory actions and the injuries to Plaintiff arising therefrom, the State of Georgia's procedures will not provide Plaintiff with adequate pre- or post-deprivation remedy to cure the erroneous deprivation of his property and liberty interests.

62.     As the law is clearly established in this area, and as Defendants had (and have) fair warning that denying Plaintiff's right to a public education, as well as a fair and open hearing prior to suspending him from UGA and releasing him from an UGA Athletic Team was unconstitutional, Defendants and its agents are liable for violating Plaintiff's rights protected by Fourteenth Amendment.

63.     Plaintiff's constitutional right to Due Process of the Fourteenth Amendment of the United States Constitution has been violated.  Dawkins, UGA Athletic Coach, UGA Athletic Association and any other Defendant involved in breach of Plaintiff's Due Process constitutional right, violated Plaintiff's clearly established constitutional rights, of which any reasonable college official or agent should have known, rendering them liable to Plaintiff under 42 U.S.C. 1983.

64.     Plaintiff has suffered actual compensable injury, including not being drafted as a professional athletic player in a major professional sports league, in an amount to be shown later either in discovery or trial. Plaintiff has also suffered damage to his good name, reputation, honor, integrity, emotional distress and other economic injuries due to the many in which Defendants and its agents breached Plaintiff's constitutional rights.

65.     In the alternative to actual compensatory damages, Plaintiff is entitled to an award of nominal damages for the violation of his constitutional rights.

66.     Plaintiff is also entitled to an award of punitive damages because these Defendants conduct involves recklessness or callous indifference to the federally protected rights of others, including Plaintiff.

67.     The denial of constitutional rights is an irreparable injury *per se, Elroy v. Burns,* 427 U.S. 347, 373 (1976), and Plaintiffs are entitled to declaratory and injunctive relief, damages in an amount to be determined at trial, plus prejudgment

interest, expenses, and the reasonable costs and disbursements of this lawsuit, including reasonable attorney fees.

### THIRD CAUSE OF ACTION
### 42 U.S.C. 1983 INDIVIDUAL LIABILITY
### FREE SPEECH CLAUSE VIOLATION
### (INDIVIDUAL DEFENDANTS IN PERSONAL CAPACITY)

68.  Plaintiff re-alleges and incorporates by reference all previous allegations.

69.   Plaintiff public statements on campus were speech acts protected from infringement by the First Amendment of the U.S. Constitution.

70.   Defendants and its agents' actions in conspiring to suspend, release Plaintiff from an UGA Athletic Team and other sanctions were taken in retaliation for Plaintiff's exercise of his First Amendment freedoms.

71.   Defendants and its agents' stated reasons for suspending and releasing Plaintiff from an UGA Athletic Team and other imposed sanctions were pretextual and had no rational basis.  Plaintiff posed no threat to self or others at any time.

72.  As the law is clearly established in this area, and because Defendants had (and have) fair warning that suspending a student from a public university in retaliation for the exercise of First Amendment freedoms is unconstitutional, the Individual Defendants are personally liable in their individual capacities for violating Plaintiff's First Amendment rights.

73.  The denial of constitutional rights is irreparable injury per se, and Plaintiff is entitled to declaratory and injunctive relief and to compensatory damages to be determined by an impartial jury.   In addition, Plaintiff is entitled to punitive damages for Defendant's willful and malicious violation of its First Amendment rights.

## FOURTH CAUSE OF ACTION
## 42 U.S.C. 1983 PROCEDURAL AND SUBSTANTIVE DUE PROCESS (INDIVIDUAL DEFENDANTS IN PERSONAL CAPACITY)

74.  Plaintiff re-alleges and incorporates by reference all previous allegations.

75.  Article I, Section 1, Paragraph 1 of the Georgia Constitution; and the Due Process Clause of the Fourteenth Amendment guarantee that no person shall be deprived of life, liberty or property without due process of law.

76.  Students at public universities enjoy a protected property interest in their education such that due process must be afforded them prior to the denial of those interests.  At a minimum, this includes notice and an opportunity to be heard.  See Goss v. Lopez, 419 U.S. 565, 574 (1975); Bd. of Curators v. Horowitz, 435 U.S. 78, 86 (1978).

77.  At no time have Defendants or its agents provided Plaintiff with these essential rights.

78. As the law is clearly established in this area, and because Defendants had (and have) fair warning that denying Plaintiff the right to a public education, as well as a fair and open hearing suspension from UGA was unconstitutional, Defendants are individually liable for violating Plaintiff's rights protected by the Fourteenth Amendment.

79. The denial of constitutional rights is irreparable injury per se, and Plaintiff is entitled to declaratory and injunctive relief and to compensatory damages to be determined by an impartial jury.  In addition, Plaintiff is entitled to punitive damages for Defendant's willful and malicious violation of its First Amendment rights.

## FIFTH CAUSE OF ACTION
### Equal Protection
### Deprivation of Equal Protection U.S. Const. Amend. XIV (42 U.S.C. § 1983)

80. Plaintiff re-alleges and incorporates by reference all previous allegations.

81. Plaintiff states this cause of action against Defendants in their official capacities.  Plaintiff challenges UGA Non-Discrimination and Anti-Harassment Policy, (hereinafter "NDAH Policy") as applied to him and Defendants decisions and actions.

82.    The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

83.    As applied to Jonathan, Defendants decisions and actions were use with a purpose to discriminate against Plaintiff. In addition as applied, the UGA NDAH Policy was used with a purpose and intent to discriminate against him.

84.    UGA agents, including Dawkins, Morehead, Tate and the Board utilized UGA NDAH Policy to punish him for constitutional protected speech regarding race.  (Plaintiff 's intent and context were in a positive manner and support of a person.  When Plaintiff learned his statement was viewed negatively, he stopped and apologized). While such speech is clearly permitted, the Defendants and UGA Coach as agent for UGA imposed sanctions against Jonathan.  However when UGA was faced with other students and/or college members engaging in engaging in speech regarding race, UGA did not impose such or similar sanctions nor remove them from their affiliation with UGA.   Thus, UGA treats similarly situated people differently.

Specifically, Jonathan Ledbetter, UGA Athlete had two (2) alcohol related arrests.  The second arrest lead to a sanction of a 6-game suspension and being temporarily excused from the team so he could seek treatment.  Jonathan was

never arrested.  Athlete Ledbetter was not permanently released from an athletic team as Jonathan was. Nor was Ledbetter suspended from school as Jonathan was.

Natrez Patrick, UGA Athlete's behavior violated UGA's marijuana-use policy twice with previous marijuana arrest.  His sanction was four (4) game suspension.  Jonathan was not arrested.  Athlete Patrick was not permanently released from a UGA Athletic Team as Jonathan was. Nor was Patrick suspended from school as Jonathan was.

Elijah Holyfield, UGA Athlete, was charged with misdemeanor, for marijuana possession.  His sanction for misbehavior was a single game suspension.  Athlete Holyfield was not permanently released from an UGA Athletic Team as Jonathan was.  Nor Holyfield suspended from school as Jonathan was.

Riley Ridley, UGA Athlete was disciplined for misbehavior of marijuana possession, a misdemeanor.  Ridley's sanction was a single game suspension. Ridley was not permanently released from an UGA Athletic Team as Jonathan was.  Nor was Ridley suspended from school as Jonathan was.

Jayson Stanley, UGA Athlete was disciplined for misbehavior of marijuana possession.  His sanction was a one-game suspension.  Athlete Stanley was not permanently released from an UGA Athletic Team as Jonathan was.  Nor was Stanley suspended from school as Jonathan was.

Osei-Frimpong, (hereinafter "Frimpong") a student teacher, since 2016 made statements about race relations and were posted online.  Those statements included but are not limited to "some white people may have to die for black communities to be made whole in this struggle to advance freedom". UGA never disciplined or issued any sanctions to Frimpong for such speech. (Frimpong's was accused for filling out his graduate school application because he did not mention his prior studies at University of Chicago….. and was reviewed by The Office of Student Conduct who did not find any violation of the school code of conduct).

See  www.ajc.com/news/local-education/uga-grad-student,  by  Eric  Stirgus,  The Atlanta Journal-Constitution, May 8, 2019.  The EOO at UGA did not conduct an investigation and thus did not issue sanctions to Frimpong's regarding his statement about race.

 Andrew Logan Lawrence, went to the EOO Office, as a UGA student, on three (3) separate occasions, with three (3) separate speech statements of Frimpong regarding the white race and asked to file a Complaint and for the EOO to open an investigation.  All of his requests were denied by the EOO.  The specific facts, as noted in his Affidavit attached hereto as Exhibit A are as follows:

1.  Throughout the Fall 2018 semester, I met with the University of Georgia Equal Opportunity Office (hereinafter 'EOO') on three (3) separate occasions in order to provide their office with information related to an

altercation that took place in the Miller Learning Center between myself and UGA Philosophy student teacher, Irami Osei-Frimpong.

2. Mr. Osei-Frimpong was invited to speak at a general body meeting of the UGA Young Democrats on September 12, 2018, and I attended as student journalist, who wished to ask Mr. Osei-Frimpong about a number of statements he had made about white students on various social networking sites, including, but not limited to, comparing white students to children living with autism, calling them white supremacists, and Chick-fil-A workers.

3. During the exchange, which was videoed, during the question and answer portion of the meeting, Mr. Osei-Frimpong stated that white people were "sociopaths," and told me to "shut my yap" when I attempted to ask for clarification on his statements. He then went on to indicate that "it was a strategy to pretend that all white people were individuals." The degree to which I was humiliated by Mr. Osei-Frimpong and the nearly fifty (50) student attendees for simply being white is immeasurable.

4. On September 14, 2018, Mr. Osei-Frimpong took to the UGA Young Democrats Facebook page, where he publicly stated that my urge to ask questions was a "tick," that I was "culturally deficient," and that I should apologize because I was "sucking up so much air in the room." He continued to teach courses throughout this time.

5. On September 19, 2018, Kieran Morrow, Associate Director of the EOO, who had caught wind of the altercation, contacted me via phone to schedule a time to meet and discuss the events that had transpired. Following the call, I provided her with a video of the altercation, via email. I met with Miss Morrow on Wednesday, September 26, 2018.

During this meeting, I provided her with a detailed account of the events that transpired. I was unable, at this time, to share the video of Mr. OseiFrimpong's lecture, due to the file size, and was told that I could not file a formal complaint until she viewed the video of Mr. Osei-Frimpong's lecture.

6. After unsuccessful attempts to provide the EOO with video of Mr. OseiFrimpong's lecture through e-mail or flash drive, I again met with Miss Morrow in October 2018, the specific date of which, I am uncertain, as the meeting was scheduled over the phone. During this meeting, Miss Morrow watched the video of Mr. Osei-Frimpong's lecture, on my phone, and transcribed 2-3 pages of Mr. Osei-Frimpong's comments. I also pointed Miss Morrow in the direction of Mr. Osei-Frimpong's RateMyProfessor.com page, which displays two student reviews from earlier in 2018, where students indicated that Mr. Osei-Frimpong had discriminated against them for being white. One student wrote that Mr. Osei-Frimpong told her that, since she was a member of a sorority, she was "bound to end up hooked on Xanax and living in Peachtree City." Miss Morrow claimed that she could not accept these reviews and informed me that based upon what she had seen in the video of Mr. OseiFrimpong's lecture, and the video of our altercation, I would not be allowed to file a formal complaint.

7. Following a November 21, 2018 article that I penned for my previous employer, *Campus Reform.org*, which highlighted Mr. Osei-Frimpong's suspension from Facebook for his comments, I again met with Miss Morrow, presenting her with a number of written statements published by Mr. Osei-Frimpong, which continually criticized white students. Again,

the EOO denied my request to file a complaint against Mr. OseiFrimpong, and I was told that the EOO would investigate his student course reviews at the end of the semester. This was the last time that I heard from the EOO. This 18th day of February 2021.

85.    Defendants, an UGA Coach, acting as agent for Defendants and UGA Athletic Association imposed sanctions against Jonathan, a former UGA athlete for same. However when UGA and Defendants was faced with other UGA athletes engaging in misconduct, including misconduct that was illegal, UGA did not impose such or similar sanctions nor remove them from an UGA Athletic Team. Thus, UGA and Defendants treats similarly situated people differently.

86.    By purposefully imposing sanctions on Jonathan, including but not limited to suspension, removing him from an athletic team, prohibiting association with certain UGA divisions, as other sanctions as indicated above, UGA, Defendants, including but not limited to Dawkins, Morehead, Tate and UGA Coach acting as agent for UGA and UGA Athletic Association**, Inc.** is discriminating and deprive Jonathan of the equal protection of the laws within the meaning of the Fourteenth Amendment to the United States Constitution.

87.    As applied to Plaintiff, the harm caused by application is loss pronounced on education and future employment and thus is particularly pronounced and the amount of damages will be shown later, either in discovery or trial.

88.    Plaintiff's has lost the opportunity to play as a member of a professional sport team in major league which causes him severe and ongoing humiliation, emotional distress, pain, suffering and stigma.

89.    Plaintiff has also suffered actual compensable injury, including loss of multiple employment opportunities, including but not limited to not being drafted/employed as a professional athletic player/member in a major professional sports league, despite having the proven ability and record.  Such amount to be shown later either in discovery or trial.

As a result, Plaintiff has also lost significant income and finances in an amount that will be shown later either in discovery or trial.

90.    All Defendants and UGA agents involved in breach and deprivation of Plaintiff's Equal Protection Rights, violated Plaintiff's clearly established constitutional rights, of which any reasonable college official or agent should have known, rendering them liable to Plaintiff under 42 U.S.C. 1983.

91.    Breaching one's constitutional rights is not narrowly tailored to advance a compelling government interest, nor is it rationally related to any legitimate government interest. UGA NDAH Policy as applied in this case, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

92.    The denial of constitutional rights is an irreparable injury *per se, Elroy v. Burns,* 427 U.S. 347, 373 (1976), and Plaintiffs are entitled to declaratory and injunctive relief, damages in an amount to be determined at trial, plus prejudgment interest, expenses, and the reasonable costs and disbursements of this lawsuit, including reasonable attorney fees.

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT

93.    Plaintiffs repeat and reallege each of the foregoing paragraphs in this Complaint.

94.    The Board's and UGA policies and provisions in the UGA student handbook and student athletic handbook establish a binding agreement between the Defendants and each UGA student.

95.    Incorporated into this agreement is Defendant's obligation to follow the procedures they have established for student discipline and Freedom of

Expression.   Defendants, Dawkins, UGA, UGAAA and Morehead breached the UGA policies and student handbook's provision by sanctioning Jonathan for speech that is permitted by the Freedom of Expression.   The Equal Opportunity Office is part of the University of Georgia's Code of Conduct.

96.     Defendants failed to follow these binding procedures, which include but are not limited to the following. *Specifically there is to be a 2 part process for the Investigation and Resolution/Hearing, an Investigator and Misconduct Panel or Hearing Officer.  Once the Investigator finalizes the investigation report, the Investigator is required to provide such report to the Misconduct Panel or Hearing Officer.  Further the investigator may testify as a witness regarding the investigation and findings, BUT SHALL OTHERWISE HAVE NO PART IN THE HEARING PROCESS and shall not attempt to otherwise influence the proceedings outside of providing testimony during the hearing.*  The actual language is

2. The final investigation report should be provided to the misconduct panel or hearing officer for consideration in adjudicating the charges brought against the Respondent. A copy shall also be provided to the respondent and Complainant (where applicable) before any hearing. The investigator may testify as a witness regarding the investigation and findings, but shall otherwise have no part in the hearing process and shall not attempt to

otherwise influence the proceedings outside of providing testimony during the hearing.

3. Dawkins was the Investigator and Misconduct Panel or Hearing Officer in the subject case. This precluded the two (2) part and separate fact finder provision required. This issue was addressed in the appeal to UGA President Morehead and the BOR but they refused to follow their own rules and thus breached the contract with John Doe. This violation added to Dawkins issue of lack of impartiality as she had already stated to Jonathan and his parents "I am personally offended by the statement: (i.e. of Jonathan).

UGAAA AND UGA also breached the UGA and UGAAA student athletic handbook which states the following:

Above all, we recognize the University's obligation to the state of Georgia and to the parents everywhere who send us their sons and daughters, to provide our students with a level of quality education which leads to recognized academic achievement, contributing to their social development and preparing them for meaningful lives and careers…..Releasing someone from an athletic team for a brief incident does not contribute to their social development. Other colleges have such behavior and were able to effectively handle the situation. They simply responded by stating that they do not agree with the speech, its not unlawful.

## INTEGRITY

By their very nature, athletics involve <u>character development</u>; for this reason we must conduct ourselves with utmost integrity.  All of our programs, and the activities on our behalf by alumni and friends, must be consistent with the policies of the University and the athletic bodies which govern us.  We are to be at all times honest and forthright in our dealings with each other, the public and media.  UFAAA did not work with Jonathan's character development in this matter.  Nor was UGAAA consistent with its policy of the University regarding student/agent/athlete speech regarding speech.

## PERSONAL DEVELOPMENT

Our primary purpose is to promote the personal growth and physical well-being of our student athletes, to guide them to become in life the best they can be.  It is our abiding goal to foster the ideals, standards, and value systems which will enable them to grow spiritually, emotionally and intellectually, and to attain degrees in their chosen fields of endeavor.  Unfortunately UGA or UGAAA did not do this with Jonathan.

## LEADERSHIP

Our goal is to maintain a model athletic program which other colleges and universities may wish to emulate.  Beyond this, we  shall continue to pioneer and promote policies which will  enhance the quality of intercollegiate athletes throughout America.   Dedication to personal development of our student athletes…..these are the values which underlie our endeavors and the standards by which we measure ourselves.  Unfortunately these were not the actions of UGAAA including its Chairman and President Morehead in this matter.

97.    The Georgia State Legislature has waived sovereign immunity of the State and its departments and agencies for claims for breach of written contracts.  OCGA 50-21-1(a).

98.    Defendants and its agents in failing to provide the procedures and rights guaranteed by their own policies have imposed substantial economic harm upon Plaintiff, who had lost academic benefits of the classes he was unable to complete, has suffered reputational harm, has been forced to bear the financial burden of enrolling in another public  university at great expense, and has been forced to relocate to continue his studies.

99.    Defendants and its agents' actions constitute breach of contract and Plaintiff is entitled to compensatory damages to be determined by an impartial jury

# SEVENTH CAUSE OF ACTION

# Declaratory Relief and Injunction (28 U.S.C. 2201)

# (Against all Defendants)

100.   Plaintiffs repeat and reallege each of the foregoing paragraphs in this Complaint.

101.   Defendants have committed numerous violations of Federal and state law.

102.   Plaintiff's future has been severely compromised and damaged.   Without appropriate redress, the sanctions imposed as a result of Defendants' and Defendants' agents biased investigation and hearings and violations of Plaintiff's constitutional rights will continue to cause irreversible damage to Plaintiff's career and future employment prospects, with no end in sight.

103.   As a result there is a justiciable controversy between the parties with respect to the outcome, permanency and future handling of Plaintiff's formal student record at UGA.

104.   By reason of the foregoing, Plaintiff requests, pursuant to 28 U.S.C. 2201, a declaration that (i) the outcome, findings and sanctions of Defendant Dawkins of EOO be reversed; (ii) all Sanctions in this matter be reversed; (iii) Plaintiff's reputation be restored; (iv) all records at UGA and in Defendants' possession, including at the UGA Athletic Team Plaintiff was a player/member,

regarding this matter be expunged; (v) the record of Plaintiff's suspension and all sanctions from this incident be removed from his education file and any file at UGA; (vi) any and all recordings pertaining to the investigation be destroyed; (vii) UGA sanctions in this matter be declared unconstitutional; (viii) Plaintiff's permanent release from a UGA Athletic Team be reversed; and (vx) UGA's NDAH  Policy as applied and Defendant's and its agents release of Plaintiff from an UGA Athletic Team be declared as unconstitutional.

## JURY TRIAL

Plaintiffs demand a trial by jury on all claims triable by a jury in this lawsuit.

## PAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment against Defendants and provide Plaintiff with the following relief:

(a)   That the Court grant Plaintiff's declaratory and injunctive relief, and award compensatory and punitive damages against the Defendants for violating and interfering with his rights protected by the First and Fourteenth Amendments to free expression, due process and equal protection under the law all in an amount to be determined by the enlightened conscious of an impartial jury.

(b)   That Plaintiff recover an award of compensatory damages, including

but not limited to for loss of income loss of multiple employment opportunities, including but not limited to not being drafted/employed as a professional athletic player/member in a major professional sports league.   Such amount to be shown at trial. The award for compensatory and nominal damages as determined by the enlightened conscience of the jury;

(c)   That Plaintiff recover reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C.1988 and all other applicable law;

(d)   That a Declaratory Judgment stating the relief requested in Seventh Cause of Action of this Complaint be awarded;

(e)   That Plaintiff recover an award of punitive damages;

(f)   That Plaintiff recovery an award of attorney fees;

(g)   That Plaintiff recover the full value of past and future lost wages in an amount to be proven at trial;

(h)   That Plaintiffs recover for mental and physical pain and suffering, emotional distress, damage to reputation, finances lost from academic classes he was unable to complete and losses from being forced to enroll in another university, in an amount to be determined by the

enlightened conscious of a jury;

(i)     That Plaintiff recover such other and further relief that is required under the circumstances;

(j)     That Plaintiff recover such other and further relief as is just and proper;

(k)     That Plaintiff recover all other further relief to which Plaintiff may be entitled; and

(l)     That all issues be tried before a jury.

This   27th   day of September 2021.

**DOROTHY SPINELLI PC**

By:   s\Dorothy Spinelli
Dorothy Spinelli
Georgia Bar No. 622927
*Attorney for Plaintiff*

1105 Town Blvd, # 2506
Brookhaven, Georgia 30319
404-789-4635
E-mail: dorothyspinelliesq@gmail.com