## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JONATHAN A. SASSER,

      Plaintiff,

               v.

BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA, *et al.*,

      Defendants.

Civil Action No.
1:20-cv-4022-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants' renewed motions to dismiss the Amended Complaint [ECF 49; ECF 55; ECF 56]. After careful review of the parties' briefing, the Court **GRANTS** Defendants' motions.

## I.     BACKGROUND

The following well-pled allegations are accepted as true for purposes of this motion.[1] On or about September 29, 2018, Plaintiff Jonathan A. Sasser attended a University of Georgia (UGA) football game.[2] While spectating, Sasser, in the presence of other students, used a racial slur to refer to one of the student football

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 86, at ¶ 38.

players.[3] After being told that the slur was offensive, Sasser stopped using it and apologized.[4]

Sasser was a member of the UGA baseball team at the time.[5] The day after the football game, Sasser met with his baseball coach to discuss the incident.[6] His coach read him an email describing what happened and, when asked, Sasser admitted to using the slur but described the alleged facts as "out of proportion."[7] Over the course of the next few days, Sasser met with other officials associated with Defendant University of Georgia Athletic Association (UGAAA) to discuss the incident.[8] On or about October 3, 2018, Sasser met with these officials at the UGAAA offices and was informed he was being released from the baseball team.[9]

Around the same time, Defendant Eryn Janyce Dawkins, director of Defendant University of Georgia Equal Opportunity Office (EOO), conducted an

---

[3]   *Id.*

[4]   *Id.*

[5]   *Id.* ¶ 18.

[6]   *Id.* ¶ 19.

[7]   *Id.*

[8]   *Id.*

[9]   *Id.*

investigation and held a hearing regarding Sasser's use of the racial slur.[10] Despite provisions in the UGA student handbook requiring investigations and hearings to be conducted by different people, Dawkins served as investigator, sole fact finder, and decision maker for the EOO adjudication.[11] Dawkins expressed to Sasser that she was personally offended by the racial slur and did not allow him to confront or cross-examine the witnesses to the incident.[12]

On October 4, 2018, Dawkins issued findings and sanctions, including suspending Sasser for the remainder of the Fall 2018 semester.[13] Dawkins issued revised sanctions on October 9, 2018, which permitted Sasser to attend classes remotely, but prohibited him from participating in UGA athletics, from attending UGA home games until January 2020, and from entering the UGA campus without permission from EOO during the Fall 2018 semester.[14] Sasser was unable to attend all of his classes remotely.[15]

---

[10]   *Id.* ¶ 23.

[11]   *Id.*

[12]   *Id.* ¶ 55.

[13]   *Id.* ¶ 56.

[14]   *Id.*

[15]   *Id.*

Sasser appealed these sanctions and his removal from the baseball team to Defendant Jere Wade Morehead, President of UGA, citing law in support of his position that the speech was constitutionally protected, but Morehead upheld the sanctions as well as Sasser's release from the baseball team.[16] Sasser then appealed the decisions to Defendant the Board of Regents of the University System of Georgia (the Board) which, after a hearing, also upheld the decisions.[17] Sasser's attorney was not allowed to participate in the hearing.[18]

Sasser filed suit on September 29, 2020,[19] and amended his Complaint on February 18, 2021.[20] The Court ordered Sasser to file a Second Amended Complaint identifying himself by name in accordance with Federal Rule of Civil Procedure 10(a), which Sasser filed on September 27, 2021.[21] Sasser alleges violations of his rights to freedom of speech and substantiative and procedural due process, seeking relief under 42 U.S.C. § 1983 against the Board, UGA, EOO, UGAAA, Morehead in his official and individual capacities, Dawkins in her

---

[16]  *Id.* ¶ 25.

[17]  *Id.* ¶ 26.

[18]  *Id.*

[19]  ECF 1.

[20]  ECF 46.

[21]  ECF 86.

official and individual capacities, Edward McMillian Tate, UGA's vice chancellor of Legal Affairs, in his official and individual capacities, and C. Dean Alford, P.E., a member of the Board, in his official and individual capacities.[22] Sasser also asserts a § 1983 claim against Defendants "in their official capacities," for violating his right under the Fourteenth Amendment to equal protection,[23] a claim for breach of contract,[24] and a claim for declaratory and injunctive relief.[25]

Each Defendant filed a motion to dismiss Sasser's original Complaint,[26] and renewed their motions after Sasser amended his Complaint,[27] arguing that they are entitled to Eleventh Amendment, qualified, and/or quasi-judicial immunity and, regardless, that Sasser's Amended Complaint fails to state a claim upon which relief can be granted. Sasser's filing of the Second Amended Complaint did not moot the renewed motions to dismiss, which are fully briefed and ripe for

---

[22] *Id.* ¶¶ 32–79.

[23] *Id.* ¶¶ 80–92.

[24] *Id.* ¶¶ 93–99.

[25] *Id.* ¶¶ 100–04.

[26] ECF 32 (Alford's motion to dismiss); ECF 35 (UGAAA's motion to dismiss); ECF 37 (the Board, Dawkins, Morehead, Tate, and EOO's motion to dismiss).

[27] ECF 49 (Alford's renewed motion to dismiss); ECF 55 (the Board, Dawkins, Morehead, Tate, and EOO's renewed motion to dismiss); ECF 56 (UGAAA's motion to dismiss).

consideration.[28] The Court does not reach the issue of whether quasi-judicial immunity bars any of Sasser's claims because the Eleventh Amendment, qualified immunity, and Sasser's failure to state a claim resolve the motions.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction can attack either the basis for jurisdiction as alleged on the face of the complaint or the facts supporting jurisdiction. *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). "If the challenge is facial, 'the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised.' Accordingly, 'the court must consider the allegations in the plaintiff's complaint as true.'" *Id.* (internal citations omitted). The Court merely looks to see if the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

---

[28]  ECF 53 (Sasser's response to Alford's renewed motion to dismiss); ECF 59 (Alford's reply in support of his renewed motion to dismiss); ECF 64 (response in opposition to UGAAA's renewed motion to dismiss); ECF 65 (response in opposition to the Board, Dawkins, Morehead, Tate, and EOO's renewed motion to dismiss); ECF 72 (the Board, Dawkins, Morehead, Tate, and EOO's reply in support of renewed motion to dismiss); ECF 73 (UGAAA's reply in support of renewed motion to dismiss).

"Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). As the Defendants do not rely on evidence outside the Complaint, the Court interprets their challenges as facial attacks on subject matter jurisdiction.

## B.    Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n,* 605 F. 3d at 1289 (quoting *Twombly*, 550 U.S. at 570).

A complaint is facially plausible when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable

for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court is not bound, however, to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79.

## III.   DISCUSSION

### A.   Abandoned Claims Against UGA and EOO

UGA and EOO move to dismiss Sasser's claims, in part, because they are not legal entities that can be sued. It is well established that member institutions of the Board are not "separate or distinct" legal entities, and, therefore, "cannot sue or be sued." *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 878 (2006). *See Picou v. Nat'l Collegiate Athletic Ass'n*, No. 1:20-CV-4697-MHC, 2021 WL 3400593, at *1 (N.D. Ga. Feb. 22, 2021) (dismissing claims against University of

West Georgia); *Ranson-Dillard v. Tech. Coll. Sys. of Ga.*, No. 7:20-CV-247 (HL), 2021 WL 2003557, at *2 (M.D. Ga. May 19, 2021) (dismissing claims against Southern Regional Technical College). Sasser has not responded to this well-founded argument. Accordingly, the claims against UGA and EOO are dismissed.

### B.   Eleventh Amendment Immunity

#### i.   The Board of Regents

The Board has moved to dismiss on the basis that, as an arm of the state, it is entitled to immunity under the Eleventh Amendment.[29] "The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity." *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995). "Eleventh Amendment immunity 'extends not only to the state itself, but also to state officers and entities when they act as an 'arm of the state.'" *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014).

Sasser does not argue that the Board, the governing body of the public university system in Georgia, is not an arm of the state, nor could he. *See Nicholl v. Bd. of Regents of Univ. Sys. of Ga.*, 706 F. App'x 493, 495 (11th Cir. 2017) ("The Board

---

29   ECF 55-1, at 10.

is considered a state entity that is an arm of the state of Georgia for purposes of the Eleventh Amendment.") (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616–17 (2002), *Stroud v. McIntosh*, 722 F.3d 1294, 1299 (11th Cir. 2013), and *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301–02 (11th Cir. 2007)). Sasser nevertheless argues that he is permitted to pursue his constitutional claims because the Fourteenth Amendment provides an exception to the protections of the Eleventh Amendment.[30] In support, Sasser cites *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), in which the Supreme Court held, notwithstanding the Eleventh Amendment, that Congress had authority under the Fourteenth Amendment to require states to pay employees back pay and attorneys' fees pursuant to the Civil Rights Act.

Sasser's argument directly conflicts with binding precedent. *Fitzpatrick* dealt with a Congressional act which, as noted, can override Eleventh Amendment Protections, but only when Congress makes "its intention unmistakably clear in the language of the statute." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989)). As relevant here, "Congress has not abrogated states' immunity from § 1983 suits." *Williams*, 477 F.3d at 1301.

---

[30]   ECF 65, at 4–7.

Sasser has not argued Congressional abrogation of states' immunity from breach of contract claims and, moreover, "Georgia has not waived its Eleventh Amendment immunity from suit in federal court for breach of contract claims." *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012). Since the Board has not consented to suit, it is entitled to immunity.

### ii.    UGAAA

UGAAA argues that it is a private corporation and is not subject to liability under § 1983.[31] In response, Sasser argues that UGAAA is an "arm of the state."[32] While Sasser is correct that courts have on occasion held that UGAAA is an "arm of the state," if true this dooms Sasser's claims because then UGAAA, like the Board, is immune from liability. *Braswell v. Bd. of Regents of Univ. Sys. of Ga.*, 369 F. Supp. 2d 1371, 1376 (N.D. Ga. 2005) (finding that "the Athletic Association exists solely for the purpose of furthering the policies and goals of the University and the Board of Regents," and is therefore entitled to Eleventh Amendment immunity); *Harrick, Jr. v. Bd. of Regents of the Univ. Sys. of Ga.*, No. CIV.A.1:04CV00541-RWS, 2006 WL 870311, at *3 (N.D. Ga. Mar. 30, 2006) (same). Thus, under Sasser's own theory of liability, UGAAA is immune from suit.

---

[31]    ECF 56, at 10–11.

[32]    ECF 65, at 4–5.

### iii.     The Individual Defendants

The same is true for the Individual Defendants, alleged agents of the Board or UGAAA, for the monetary damages claims against them in their official capacities. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

A well-recognized exception to Eleventh Amendment immunity exists for claims "alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief." *Duke v. Hamil*, 997 F. Supp. 2d 1291, 1297 (N.D. Ga. 2014). "The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. *See Ex parte Young*, 209 U.S. at 158–59, 28 S. Ct. 441." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

However, "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.* Sasser has not alleged that the Individual Defendants are presently violating federal law or are likely to do so

in the future. The Second Amended Complaint and requested relief therein relate solely to past conduct. *Ex parte Young*, therefore, does not apply, and the Individual Defendants are entitled to Eleventh Amendment immunity for each of the claims brought against them in their official capacities.

### iv.     Plaintiff's Equal Protection Claims

Notably, Sasser brought his equal protection claims only against Defendants in their "official capacity,"[33] so these claims do not survive this Eleventh Amendment analysis. Although it is unnecessary for the Court to decide the legal sufficiency of Sasser's equal protection claims, Sasser's equal protection allegations would not survive a Rule 12(b)(6) analysis in any event. Sasser has not alleged that ***similarly situated*** individuals were treated differently. *Jordan v. Sec'y, Fla. Dep't of Child. & Fam. Servs.*, 723 F. App'x 690, 693 (11th Cir. 2018) ("To be similarly situated, the comparators must be *prima facie* identical in all relevant respects."). Sasser alleges that other student athletes were disciplined differently for alcohol and drug related infractions, not for using racial slurs to refer to other students.[34] Sasser also alleges that the Board failed to discipline a student teacher

---

[33]   ECF 86, at ¶ 81.

[34]   *Id.* ¶¶ 84–85.

for certain offensive statements he made regarding race,[35] but Sasser does not allege that this student teacher was subject to the same disciplinary standards or proceedings that he was as a student of the University.

### C.     Remaining Claims Against Individual Defendants

All that remains are Sasser's claims against the Individual Defendants in their individual capacities for (1) violating his First Amendment right to freedom of speech, (2) violating his rights to substantive and procedural due process, and (3) breach of contract. The Court finds that the Individual Defendants are entitled to qualified immunity on Sasser's First Amendment and substantive due process claims and, moreover, that each claim against the Individual Defendants fails to state a claim upon which relief can be granted.

### i.     Constitutional Claims

Sasser brings his constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 creates no substantive rights. *Baker v. McCollan*, 443 U.S. 137, 140, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id*. To succeed Sasser "must prove that [ ]he was deprived of a

---

[35]   *Id.*

constitutionally guaranteed right under color of state law." *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The parties do not dispute that the Individual Defendants were acting in their discretionary authority when they committed the alleged constitutional violations.

"While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). To survive a motion to dismiss based on qualified immunity, the complaint must "allege the violation of a clearly established constitutional right." *Id.* (internal quotation marks omitted) (citations omitted).

### *a.*     **First Amendment**

Sasser alleges that Defendants violated his First Amendment right to freedom of speech by disciplining him after he used a racial slur to describe a UGA football player while attending an on-campus football game.[36] Sasser asserts a First Amendment retaliation claim, the elements of which are (1) constitutionally protected speech; (2) retaliatory conduct that adversely affected the protected speech; and (3) "a causal connection between the retaliatory action and the adverse effect on speech." *Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1328 (11th Cir. 2016). As for the first element, Sasser contends that his speech was protected because he was neither harassing nor threatening anyone.[37]

Sasser does not dispute that he made the statement on school grounds,[38] and is correct that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Comm. Sch. Distr.*, 393 U.S. 503, 506 (1969). However, these rights are necessarily

---

[36]   ECF 86, ¶ 38.

[37]   *Id.* ¶¶ 36–38.

[38]   *Id.* at ¶¶ 18, 38. The undisputed fact that Sasser's statement occurred on campus distinguishes this case from the recent Supreme Court decision in *Mahanoy Area School District v. B.L. by & through Levy*, 141 S. Ct. 2038, 2046 (2021), in which the court found that the "features of much off-campus speech mean that the leeway the First Amendment grants to schools in light of their special characteristics is diminished."

"circumscribed 'in light of the special characteristics of the school environment.'" *Morse v. Frederick*, 551 U.S. 393, 405 (2007) (quoting *Tinker*, 393 U.S. at 506). In other words, "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986).

The bounds of Sasser's First Amendment rights while on his University's campus are defined by *Tinker* and *Fraser*. In *Tinker*, the Supreme Court held that by prohibiting students from wearing black armbands to protest the Vietnam war the school district violated the students' constitutional right to freely express themselves. 393 U.S. at 514. "To justify prohibition of a particular expression of opinion," the Court found, there must be "something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id.* at 510.

In *Fraser*, the Supreme Court clarified that it is constitutionally permissible and "highly appropriate function of public-school education to prohibit the use of vulgar and offensive terms in public discourse." 478 U.S. at 683. The Court specifically found that it was within a school district's authority to discipline a student for making lewd and indecent comments during an assembly attended by approximately 600 other students. *Id.* at 686. The Court aptly stated that the

> fundamental values necessary to the maintenance of a
> democratic political system . . . must, of course, include
> tolerance of divergent political and religious views, even
> when the views expressed may be unpopular. But these
> "fundamental values" must also take into account
> consideration of the sensibilities of others, and, in the
> case of a school, the sensibilities of fellow students. The
> undoubted freedom to advocate unpopular and
> controversial views in schools and classrooms must be
> balanced against the society's countervailing interest in
> teaching students the boundaries of socially appropriate
> behavior. Even the most heated political discourse in a
> democratic society requires consideration for the
> personal sensibilities of the other participants and
> audiences.

*Id.* at 681. Indeed, the Court found, "[t]he inculcation of these values is truly the

'work of the schools.'" *Id.* at 683 (quoting *Tinker*, 393 U.S. at 508). Public schools,

therefore, "may determine that the essential lessons of civil, mature conduct

cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech

and conduct such as that indulged in by this confused boy." *Id.*

Sasser's intentions aside, he used a racially offensive term to describe a

fellow student and did so in front of other students at a school sponsored, on-

campus event.[39] Sasser's conduct more resembles the underlying conduct in *Fraser*

than in *Tinker*, and Defendants were well within their authority as educators to

---

39   *Id.* ¶ 38.

discipline Sasser for this speech. The Court need not find that Sasser's statement was harassing or threatening to come to this conclusion.

Disciplining Sasser for using a racial slur around a crowd of students while attending a school event, therefore, was not a constitutional violation, let alone one so clearly established that "every reasonable school official in the same circumstances would have known in light of the preexisting law that his actions violated First Amendment rights." *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1272 (11th Cir. 2000). The Individual Defendants are entitled to qualified immunity on Sasser's First Amendment claim. For the same reason, Sasser's First Amendment claim fails to state a claim upon which relief can be granted.

### b.    Due Process

Sasser also contends that the Individual Defendants violated his rights to substantive and procedural due process because they restricted his access to the UGA campus and removed him from the UGA baseball team without giving him notice and allowing him to be heard. Specifically, Sasser argues that his rights were violated because he was not given notice that his coaches were investigating the incident on behalf of UGA, which resulted in his release from the baseball team,[40]

---

[40]    *Id.* ¶ 57.

that the EOO investigation and sanction process did not comply with written procedures,[41] that he was not given time to adequately prepare his argument,[42] that he was not permitted to confront or cross-examine the witnesses,[43] and that his attorney was not permitted to argue on his behalf.[44]

### (1)   Substantive Due Process

Sasser has not argued that his place on the baseball team or being allowed on UGA's campus are "fundamental rights," the depravation of which violated his substantive right to due process. Sasser argues instead that he has a property interest in his education and his place on the baseball team and that Defendants' actions "shock the conscience" because they imposed sanctions on Sasser that they did not impose on other students or faculty at UGA.[45]

Fundamental rights are those "implicit in the concept of ordered liberty." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). "A finding that a right merits substantive due process protection means that the right is protected 'against 'certain government actions

---

[41]   *Id.* ¶¶ 23–26.

[42]   *Id.* ¶ 23.

[43]   *Id.* ¶ 55.

[44]   *Id.* ¶ 26.

[45]   ECF 54, at 18; ECF 65, at 12.

regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Generally, "to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.'" *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002). Conduct that "shocks the conscience" must interfere "with rights 'implicit in the concept of ordered liberty' — in other words, only if it affects individual rights guaranteed, explicitly or implicitly, by the Constitution itself." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002).

"[S]tudents at a public university do not have a fundamental right to continued enrollment." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1235 (11th Cir. 2018) (citing *Plyler v. Doe*, 457 U.S. 202, 221 (1982*)); Wells v. Columbus Tech. Coll.*, 510 F. App'x 893, 896 (11th Cir. 2013) (substantive due process claim regarding twelve-month suspension from technical college failed as a matter of law). The Eleventh Circuit has also held that students do not have a protected interest in participating in interscholastic activities, such as athletic programs, and so those activities "must be deemed to fall outside the protection of due process." *Davenport ex rel. Davenport v. Randolph Cnty. Bd. of Educ.*, 730 F.2d 1395, 1397 (11th Cir. 1984) (cleaned up). Sasser therefore has not alleged a violation of a fundamental right or one "implicit in the concept of ordered liberty."

Moreover, the Eleventh Circuit has been careful to distinguish between substantive and procedural due process claims, noting that a "claim that the government acted arbitrary and irrationally can be easily subsumed and, indeed, is more properly considered a part of a claim that improper procedures were used in the deprivation," because it is another way alleging "that no fair, unbiased, and meaningful procedures were used for the deprivation." *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1263 n.4 (11th Cir. 2003). In *McKinney*, 20 F.3d at 1561, for example, the Eleventh Circuit held that allegations that a government employer failed to provide an unbiased decision maker in terminating its employee only supported a claim for a violation of procedural due process.

Sasser's allegations cannot support a substantive due process claim because he has not alleged deprivation of a right "implicit in the concept of ordered liberty," *Dacosta* 304 F.3d at 1048, and his grievance is directed at the process in which the deprivation occurred, not the deprivation itself. *McKinney*, 20 F.3d at 1561. The Individual Defendants are entitled to qualified immunity on Sasser's substantive due process claim and, for the same reason, Sasser fails to state a claim for violation of his substantive due process right.

### (2)    *Procedural Due Process*

Sasser alleges that he has a property interest in his education and in his place on the baseball team and a liberty interest in his "good name, reputation, honor or integrity,"[46] and that Defendants deprived him of these interests without notice or an opportunity to be heard in violation of his procedural due process rights.[47] "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

As noted, Sasser does not have a constitutionally protected interest in his place on the baseball team, and so his procedural due process claim fails as to that alleged deprivation. *Davenport*, 730 F.2d at 1397 (affirming dismissal of procedural due process claim related to grooming requirements for competing in high school sports). However, students do have a protected property interest in their public education and they cannot be deprived of this interest without due process. *Goss v. Lopez*, 419 U.S. 565, 576 (1975).

---

[46]   ECF 53, at 17.

[47]   *Id.* at 11–17.

Sasser's procedural due process claims fail as a matter of law, however, because an adequate state remedy exists and Sasser failed to avail himself of it. "A procedural due process violation is not complete unless and until the State fails to provide due process. Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Valencia Coll.*, 903 F.3d at 1234 (cleaned up) (quoting *McKinney*, 20 F.3d at 1557). Sasser did not respond to Defendants' argument that students at public universities in Georgia are permitted to appeal disciplinary decisions pursuant to O.C.G.A. § 50-13-19, and that this is an adequate state remedy.[48] *See Bd. of Regents of Univ. Sys. of Ga. v. Houston*, 282 Ga. App. 412, 415 (2006) (applying O.C.G.A. § 50-13-19 to university's decision to suspend student). The statute provides direct review of university decisions, which Sasser did not

---

[48] The only point the Court *could* construe as addressing Defendants' argument concerning adequate procedures is Sasser's bare statement that "[i]n light of the Board's and UGA and its agents' retaliatory actions and the injuries to Plaintiff arising therefrom, the State of Georgia's procedures will not provide Plaintiff with adequate pre- or post-deprivation remedy to cure the erroneous deprivation of his property and liberty interests." ECF 53, at 17–18; ECF 64, at 19–20 (using exact same language but also including UGAAA). This statement was copied and pasted from Sasser's Amended Complaint. ECF 46, ¶ 61. Without any supporting factual allegations or legal authority the Court cannot credit this conclusory statement as a response and finds that Defendants' argument is effectively unrebutted.

pursue, and there is no basis for the Court to find that this remedy is inadequate. Accordingly, Sasser cannot assert a claim for violation of his right to procedural due process. *Valencia Coll.*, 903 F.3d at 1234 (dismissing student's procedural due process claim where state provided appellate remedy for university decisions).

###     ii.        Breach of Contract

Finally, Sasser's claim for breach of contract against the Individual Defendants fails because he failed to allege an agreement between himself and these individuals. The purported contracts are the UGA student handbook and the student athletic handbook. Sasser alleges that these constitute valid, binding contracts.[49] As for the student handbook, Sasser cites the procedures for student discipline and, specifically, the provision that the person investigating the incident is not to be involved in the adjudication except for testifying as to the facts.[50] Sasser alleges that Defendants violated this procedure and breached this agreement because Dawkins both investigated and adjudicated the allegations against Sasser.[51] As for the student athletic handbook, Sasser cites general statements regarding student discipline and standards for integrity, personal development,

---

[49]    ECF 86, ¶¶ 94–95.

[50]    *Id.* ¶ 96.

[51]    *Id.*

and leadership,[52] but has not alleged which parts of these statements constitute promises that Defendants breached.

Under Georgia law, these handbooks could conceivably constitute contracts between the Board and Sasser. *Compare Morehouse Coll., Inc. v. McGaha*, 277 Ga. App. 529, 532 (2005) (permitting breach of contract claim against private university based on student handbook) *with Carr v. Bd. of Regents of Univ. Sys. of Ga.*, 249 F. App'x 146, 150 (11th Cir. 2007) (undergraduate catalog could not form binding, written contract where it explicitly said otherwise and no consideration was shown). The Court has already determined, however, that Sasser's claims against the Board for breach of contract are barred by the Eleventh Amendment. *Barnes*, 669 F.3d at 1308 (holding student's breach of contract claim against university for failing to comply with student handbook procedures barred by Eleventh Amendment).

Sasser has not alleged that he entered into contracts with the Individual Defendants. Rather, he contends that these handbooks contain the Board and UGA's policies, and the Individual Defendants breached these policies as "agents" of the Board or UGA.[53] "It is axiomatic," however, "that a person who is not a

---

[52]   *Id.*

[53]   *Id.* ¶¶ 94–99.

party to a contract is not bound by its terms." *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (2006). Even as agents of the Board or UGA, the Individual Defendants cannot be bound by the terms of the handbooks because Sasser has not alleged that they either signed or assented to the terms. *See Primary Invs., LLC v. Wee Tender Care III, Inc.*, 323 Ga. App. 196, 200 (2013) (to bind agents of LLC to noncompete agreement, the plaintiff was required to "obtain their signatures in their individual capacities"); O.C.G.A. § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."). Sasser has not stated a claim for breach of contract against the Individual Defendants.

### iii.       Declaratory and Injunctive Relief

None of Sasser's substantive claims remain, and so he is not entitled to declaratory or injunctive relief. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A] motion or suit for either a preliminary or permanent injunction must be based upon a cause of action."); *State Farm Mut. Auto. Ins. Co. v. Bates*, 542 F. Supp. 807, 817 (N.D. Ga. 1982) ("The federal Declaratory Judgment Act [28 U.S.C. § 2201] involves procedural remedies only, not substantive rights, providing a federal plaintiff with a procedural alternative for judicial relief.").

IV.     **CONCLUSION**

Defendants' renewed motions to dismiss [ECF 49; ECF 55; ECF 56] are **GRANTED**. The original motions to dismiss [ECF 32; ECF 35; ECF 37] and Sasser's motion for service of Summons and Complaint [ECF 20] are **DENIED as moot**. Counts I, II, III, IV, V, and VII, of the Second Amended Complaint as well Sasser's breach of contract claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**. Sasser's claim for breach of contract against the Board, Count VI, is **DISMISSED WITHOUT PREJUDICE**, as he may pursue this claim in state court. The clerk is **DIRECTED** to close this case.

**SO ORDERED** this the 30th day of September 2021.

_____
Steven D. Grimberg
United States District Court Judge